# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 05-61944-CIV-DIMITROULEAS/TORRES

FRANK MILLER, on behalf of
himself and all others similarly situated,

Plaintiff,

v.

RELATIONSERVE, INC., et al.,

Defendants.

_____/

## ORDER DENYING MOTION FOR ATTORNEY'S FEES AND SANCTIONS

This matter comes before the Court upon Defendants' Motion for Attorney's Fees and Sanctions. [D.E. 77]. The Court has carefully reviewed the Motion, Plaintiff's Response [D.E. 79], the Reply [D.E. 80], and the file in this matter.[1] The Court also previously held an evidentiary hearing regarding Plaintiff's own Motion for Sanctions [D.E. 57], which is the precursor to the matter now before the Court. The pending motion is now ripe for disposition.

### I.  BACKGROUND

In December of 2005, Plaintiff Frank Miller ("Plaintiff" or "Miller"), a former employee of Defendants RelationServe Inc., RelationServe Media Inc., and RelationServe Access, Inc. (collectively referred to as "RelationServe"), filed an action pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiff was a commissioned salesperson and alleged that Defendants failed to pay him for back overtime wages and commissions. Specifically, Plaintiff

---

[1]   Plaintiff also filed a Motion for Leave to File Sur-Reply to Defendants' Motion for Attorney's Fees and Sanctions [D.E. 81]; that Motion was denied. [D.E. 84].

alleged that he and other similarly situated current and former employees of Defendants worked over forty (40) hours in one or more weeks, but were not paid overtime.  Defendants Answered the Complaint asserting that Plaintiff did not have standing to bring the lawsuit and that Plaintiff and others similarly situated were not entitled to overtime wages.  Defendants also alleged that Plaintiff fell within one or more exemptions of the FLSA.

During the Spring of 2006, Plaintiff and Defendants' representative entered into direct settlement negotiations without their respective counsel.  Once Defendants' counsel, Gregg McClosky ("McClosky"), received a message from his client that the client had settled the matter directly with Plaintiff, McClosky arranged for his office to draft a standard general release.  McClosky did not, at this point, notify Plaintiff's counsel that Plaintiff had settled his case without counsel.  McClosky was attending to other personal matters at the time and did not devote a great deal of attention to the matter.  Instead, McClosky's paralegal, Marianne Smith, finalized the general release and then e-mailed the release to the Human Resources director of RelationServe, with the intent that it be presented to Plaintiff for his final approval and signature.  At this point, the draft release was still not copied or forwarded to Plaintiff's counsel, either by McClosky or anyone in his office.

With the settlement documents finalized, on March 22, 2006, Plaintiff met again directly with a representative of Relationserve to obtain the settlement check and sign the general release.  Importantly, Plaintiff admitted that he never spoke to RelationServe's counsel, McClosky, during the settlement negotiations or at any time during the litigation.  He also conceded that he had not informed his own lawyers as to the status of his own negotiations and settlement.

2

On April 6, 2006, McClosky sent Plaintiff's counsel, via facsimile, the general release executed by Plaintiff as well as a copy of the settlement check.  McClosky's correspondence to Plaintiff's counsel requested that counsel provide a notice of voluntary dismissal with prejudice to be filed with the Court.  Until receipt of McClosky's April 6th letter, Plaintiff's counsel was not aware of the direct settlement between the parties nor had counsel even seen a copy of the general release.  On April 7, 2006, counsel for Plaintiff responded to McClosky's letter and stated that he would not be filing a Notice of Voluntary Dismissal with Prejudice.  Plaintiff's counsel protested that McClosky's conduct violated Rule 4-4.2, Rules of Professional Conduct based on counsel's preparation of a settlement with Plaintiff behind counsel's back.  As a result, on April 13, 2006, Plaintiff's counsel filed a Motion for Sanctions and to Set Aside the Purported Settlement Agreement [D.E. 31] and Motion for Rule 11 Sanctions. [D.E. 57].

In his Motions, among other things, Plaintiff argued that McClosky, engaged in sanctionable conduct when he directly negotiated with Plaintiff to settle the lawsuit.  Plaintiff also contended that McClosky engaged in sanctionable conduct because he  prepared the general release and failed to notify Plaintiff's counsel of the imminent settlement or provide opposing counsel with a copy of the general release until after Plaintiff executed it.  Almost simultaneously with the filing of Plaintiff's Motions, Defendants filed their Motion for the Entry of An Order of Dismissal With Prejudice [D.E. 33] and a Motion to Approve Settlement [D.E. 40].

On April 17, 2006, after receiving Plaintiff's Motion for Sanctions, McClosky sent a letter ("Rule 11 Letter") to Plaintiff's counsel informing him that McClosky had never had any communication with the Plaintiff.  The Rule 11 Letter also asserted that the Motion for

Sanctions was not supported by fact or law and requested that the Motion be withdrawn. Finally, the Rule 11 Letter warned that if Plaintiff's counsel failed to withdraw the Motion, the Defendants would move for fees and costs incurred in responding to the Motion. *See* [D.E. 77, Exh. B]. Instead of withdrawing the Motion for Sanctions, Plaintiff filed a supplement to the Motion wherein Plaintiff sought the Court to vacate the settlement and impose sanctions based on allegations of fraud and impropriety.

On June 5, 2006, the undersigned held an evidentiary hearing on the dueling motions, including Plaintiff's Motion for Sanctions that was supported by Plaintiff's affidavit claiming that he had never intended to settle the entire action. After hearing several hours of testimony and argument of counsel as well as upon a review of the record, the undersigned entered a Report and Recommendation (the "R&R"). The R&R recommended that Plaintiff's Motion for Sanctions be denied and that Defendants' Motion for Entry of An Order of Dismissal With Prejudice be granted.[2] Specifically, the undersigned found that the parties, without the involvement of their counsel, reached a full and final settlement of the lawsuit. The Court further found that the settlement was fair and enforceable by this Court as required by *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353-1354 (11th Cir. 1982). Additionally, the undersigned found that there was no unethical and/or sanctionable conduct on the part of Defendants' counsel, Gregg McClosky. On August 16, 2006, the District Court Judge entered a Final Omnibus Order adopting the R&R. [D.E. 76].

---

[2]     A Report and Recommendation was necessary in that case, unlike the present matter, because final dispositive relief – dismissal of the case – was being recommended. *See* S.D. Fla. Local Mag. R. 1(d), 4(b).

4

Over thirty days later, on September 20, 2006, Defendants filed their Motion for Attorney's Fees and Sanctions ("Motion for Fees").  [D.E. 77].  On October 2, 2006, Plaintiff filed his Response to the Motion for Attorney's Fees and Sanctions. [D.E. 79].  On October 12, 2006, Defendants filed their Reply Memorandum. [D.E. 80].

## II.   ANALYSIS

Defendants claim entitlement to their attorneys' fees pursuant to Rule 11 of the Federal Rules of Civil Procedure.  Specifically, they assert that Plaintiff's counsel failed to conduct a good faith investigation into the facts and law regarding the Motion for Sanctions and that they unnecessarily incurred attorneys fees due to Plaintiff's failure to withdraw the motion. Defendants also base their entitlement to fees on this Court's denial of Plaintiff's Motion for Sanctions.  Plaintiff argues in response that (1) Defendants' Motion for Fees is untimely; (2) Defendants failed to comply with Local Rule 7.1(A)(3); (3) Defendants failed to comply with the procedural requirements of Rule 11; and (4) Defendants are not entitled on the merits to Rule 11 sanctions.  The Court will address these arguments in turn.

### A.    *Procedural Requirements*

#### 1.    *Timeliness of Defendants' Motion for Fees*

Plaintiff asserts that Defendants' Motion for Fees is untimely per Local Rule 7.3(A) because it was filed 35 days after entry of the Court's Final Judgment.  Local Rule 7.3(A) states that any motion for attorney's fees and/or costs "shall be filed and served within 30 days of entry of a Final Judgment or other appealable order that gives rise to a right to attorneys fees and/or costs."  In this case, the Court entered its final order of dismissal on August 16, 2006 when it adopted the undersigned's R&R. [D.E. 76].  As such, Defendants were required

5

to file their Motion for Fees by no later than September 15, 2006.  The pending Motion was not filed until September 20, 2006 and, thus, Plaintiff is correct that on its face the Motion is untimely.

Defendants assert that the Motion for Fees is, in fact, timely for various reasons.  First, Defendants claim that although the Order was entered on August 16, 2006, they were not served with the Order via facsimile until August 17, 2006.  Thus, they argue that the thirty day time frame should run from that date.  Defendants also assert that the Court should include an additional three (3) days for service as proscribed by Rule 6(e).  Finally, it appears that Defendants argue that an additional two (2) days should be added to the 30 day period due to the closure of the Court on August 29-30 for tropical storm Ernesto.  Taking all of these factors into consideration, Defendants argue that their Motion for Fees was timely filed.

All of Defendants' arguments fail.  First, Local Rule 7.3(A) makes it clear that the thirty day time period for filing a motion for fees runs from *entry* of the order, not service. So, here, it is of no weight that Defendants were served with the Final Order on Aug 17th. Likewise, Defendants' argument regarding Federal Rule 6(e) is unavailing as Rule 6(e) does not apply in this instance and thus, an additional three days (for service) is not warranted. Again, the Local Rule is clear that the thirty day time frame to file a motion for fees runs from the date of entry of the Order and does not require an additional three days for service.

Finally, the argument that two additional days must be added due to Court closure for tropical storm Ernesto is also meritless.  The deadline to file the Motion did not fall on one of the days that the Court was closed (i.e., August 29 or 30).  Thus, no additional time must be added to the deadline to file a fees motion.  Indeed, Defendants had until September 15, 2006

to file their Motion and the intervening Court closure had no impact on Defendants' ability to timely file their motion.  Had the deadline to file fallen squarely on one of the two dates that the Court was closed, the Court would agree that additional time should be added.  *See* Federal Rule of Civil Procedure 6(a) (when the last day of a time period is a day in which weather has made the office of the clerk of the district court inaccessible, the period runs until the end of the next day).

Therefore, the pending motion can simply be denied on this procedural basis alone. Notwithstanding the fact that the Motion for Fees was untimely, even if the Court were to deem the Motion timely filed, it must be denied for the additional procedural and substantive reasons addressed below.

## 2.    *Conferring with Opposing Counsel*

Plaintiff next argues that Defendants' Motion for Fees should be denied because Defendants failed to Comply with Local Rule 7.1(A)(3) which requires that, prior to filing a motion, counsel for the moving party confer or make a reasonable effort to confer with counsel for the opposing party in a good faith effort to resolve the issues raised in the motion.  There is no certificate of compliance with Local Rule 7.1(A)(3) attached to the Motion for Fees and Defendants did not address this argument in their Reply.  Thus, it appears that Plaintiff is correct in his assertion that no attempt at a pre-filing conference took place.  However, it is arguable that the Rule 11 Letter itself served as notice to the Plaintiff that the Motion for Fees would be forthcoming if Plaintiff did not withdraw his Motion for Sanctions.  Indeed, the reason for sending the "safe harbor" letter is to provide notice to opposing counsel that sanctions will be sought if the offending document is not withdrawn.  And, in the Rule 11

Letter sent in this matter, counsel for Defendants made it clear that they would be seeking any attorneys' fees incurred as a result of Plaintiff's Motion for Sanctions.

So, although it appears that Local Rule 7.1(A)(3) was not literally met, it can be argued that the spirit of the Rule was met. On the other hand, Plaintiff certainly was not aware of the amount of fees being sought by Defendants. And, perhaps if Defendants conferred with opposing counsel regarding the amount of fees sought, the parties might have been able to reach an agreement on the issue. However, due to the circumstances surrounding this matter, the Court will not deny Defendants' Motion for what could be considered a failure to comply with Local Rule 7.1(a)(3).

### 3.    *Procedural Requirements of Rule 11 - Forwarding a Copy of Motion*

Plaintiff also raised the argument that Defendants failed to adhere to the procedural requirements of Rule 11 itself. Specifically, Plaintiff asserts that Defendants were required to serve the Rule 11 Motion of Plaintiff 21 days prior to filing it with the Court. Plaintiff argues that he only received the April 17, 2006 Rule 11 Letter *without* an attached motion. Plaintiff urges the Court to deny Defendants' Motion for Fees based on Defendants' failure to comply with the notice requirement of Rule 11. Defendants respond that they did, in fact, provide the requisite notice under Rule 11's safe harbor provision by providing the Rule 11 Letter itself. Alternatively, Defendants assert that they were not required to provide notice because they were defending against a Rule 11 motion and counter-requesting sanctions.

In 1993, Congress amended Federal Rule 11 to provide that a motion for sanctions "shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense,

contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A); *see also* Fed R. Civ P. 11 Adv. Committee Notes ("These provisions are intended to provide a type of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion it refuses to withdraw that position . . . ."). *See, e.g., Kaplan v. Daimlerchrysler*, 331 F.3d 1241, 1255 (11th Cir. 2003) ("That provision [Rule 11(c)(1)(A)] ordinarily gives a lawyer or litigant 21 days within which to correct or withdraw the challenged submission.").

The question here is whether Rule 11 provides for strict procedural compliance. In other words, if a party does not serve a Rule 11 *motion* and instead forwards a *letter*, are they precluded from obtaining the sanctions sought? Courts generally have strictly enforced the safe harbor requirements by routinely denying Rule 11 motions that have not met the separate motion requirement. *See, e.g., Perpetual Sec., Inc. v. Tang*, 290 F.3d 132 (2d Cir. 2002); *Thompkins v. Cyr*, 202 F.3d 770 (5th Cir. 2000). Indeed, even the case cited by Defendants, *Ridder v. City of Springfield*, found that Rule 11 sanctions were unavailable when the moving party failed to serve the requisite safe harbor notice. 109 F.3d 288, 297 (6th Cir. 1997) (holding that "sanctions under Rule 11 are unavailable, unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court"). In that case, the Sixth Circuit ultimately found that due to the procedural deficiency, Rule 11 was unavailable to address the issues raised by the movant.

However, a few cases have discussed whether the safe harbor provision may be satisfied by notice other than by a separate motion. Despite the trend toward strict enforcement of Rule 11, there are some courts that have permitted a Rule 11 Motion to be

advanced notwithstanding the fact that strict compliance with Rule 11's safe harbor provision was not met.  For instance, in *Barker v. Bank One*, 156 F.3d 1228 (6th Cir. 1998), the Court distinguished the *Ridder* case in awarding sanctions.  In *Barker,* the court concluded that the purpose of the safe harbor provision was satisfied by warning letters that counsel had written and forwarded to opposing counsel.  *Id.*  The letters made it clear that sanctions would be sought due to the frivolity of the case unless the case was dismissed.  *Id.  See also Jeffreys v. Rossi*, 275 F.Supp.2d 463 (S.D.N.Y. 2003) (service of detailed letter outlining anticipated motion was sufficient notice of defendants' intent to move for sanctions and an opportunity to withdraw the offending papers) (citing *Nisenbaum v. Milwaulkee County*, 333 F.3d 804, 808 (7th Cir. 2003) (finding that defendants' "letter" rather than "motion" constituted substantial compliance with Rule 11(c)(1)(A) because defendants alerted plaintiff to the problem and provided more than 21 days to rectify)); *but see Landcaster v. Zufle*, 170 F.R.D. 7 (S.D.N.Y. 1996) (finding letter requesting lawsuit to be withdrawn did not comply with safe harbor provision of Rule 11).

It is not entirely clear whether the Eleventh Circuit would under these circumstances follow a strict reading of Rule 11's safe harbor requirements or whether it would deem Defendants' April 17, 2006 warning letter to be in substantial compliance with the Rule.  It is true that the Defendants' Rule 11 Letter described the conduct alleged to violate the rule and it also stated that its intent was to serve as notice under Rule 11.  While Defendants' counsel admits that it did not serve Plaintiff's counsel with a formal motion, he argues that opposing counsel had ample notice and time to withdraw its motion for sanctions.  However, a similar argument was rejected by the Northern District of Florida.  In *In re Kirk-Murphy Holding,*

10

*Inc.*, 313 B.R. 918 (N.D. Fla. 2004) a warning letter was sent to opposing counsel instead of a motion for sanctions.  The movant argued that the letter was sufficiently clear that sanctions would be sought if the pleading was not withdrawn.  *Id.* at 920.  However, the court rejected this argument in finding that a warning letter, no matter how detailed, is not a proper substitute for a motion.  *Id.* at 921 (citations omitted).  The motion for sanctions was thus denied.  *Id. at 923*.

The Court believes that although the Eleventh Circuit has not announced a position on the precise issue, it would find Defendants' Rule 11 Letter procedurally defective.  Indeed, that should be the result because Rule 11's purpose is to "deter baseless filings and curb abuses." *Business Guides, Inc. v. Chromatic Comms. Enter., Inc.,* 498 U.S. 533, 553 (1991).  That purpose is quite analogous to the penal nature behind the sanction power found in 28 U.S.C. § 1927 against attorneys who unreasonably and vexatiously multiplies the proceedings in a civil case.  Under section 1927, the Eleventh Circuit has squarely held that the standards applicable to an award of sanctions must be "strictly construed." *Peterson v. BMI Refractories, Inc.,* 124 F.3d 1386, 1397 (11th Cir. 1997).  Accordingly, it follows that in this Circuit the procedural requirements of Rule 11 must also be strictly construed.  A strict construction of the Rule here requires that the Court follow what the Northern District found to be the conclusion of the "overwhelming majority of courts" that a warning letter is not the functional equivalent of serving a motion for sanctions.  *Kirk,* 313 B.R. at 921.[3]

---

[3]    For similar reasons, we squarely reject Defendants' argument that it was not required to comply with the safe harbor provision of Rule 11 because it was "counter-requesting sanctions."  Defendants were defending against Plaintiff's Motion for Sanctions months ago and are now raising their own separate motion for sanctions.  The Advisory Committee's notes specifically refer to a situation wherein a party defending against a motion

Therefore, the Court finds that there are two separate procedural bases to deny the pending motion for Rule 11 sanctions. Nevertheless, the substantive arguments raised in support of the pending motion will also be addressed.

### B.   *Substantive Analysis of Rule 11*

Rule 11 allows a court to impose "appropriate sanctions," after notice and a reasonable opportunity to respond, when a party presents to the court a pleading, written motion or other paper that is not based in fact, is not legally tenable, or is submitted in bad faith for an improper purpose. Fed. R. Civ. P. 11(c); *see also Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002). Thus, under Rule 11, a court has the discretion to award sanctions where a party or attorney has signed and filed a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) is filed in bad faith for an improper purpose. *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (citations omitted); *see* Fed. R. Civ. P. 11(b).

The Eleventh Circuit has developed a two-step inquiry for Rule 11 sanctions that examines (1) whether the claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that the claims were frivolous. *See Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). The first prong of this inquiry is an objective standard for assessing conduct, which takes into account the "reasonableness under the

_____

for sanctions immediately makes its own request for sanctions in response. The Court then has the authority to award reasonable expenses to the party even though he or she was the target of the motion. The Notes clearly contemplate that the counter-motion for sanctions must also comply with the procedural requirements of Rule 11. Nothing in the text of Rule 11 supports a contrary conclusion.

circumstances" and "what was reasonable to believe at the time" the representation to the Court was made. *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1331 (11th Cir. 1992); *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). Rule 11 imposes an obligation to "make a reasonable inquiry into both the legal and factual basis of a claim . . . ." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996). Courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. *Kaplan v. Daimlerchrysler*, 331 F.3d 1241, 1255 (11th Cir. 2003).

Defendants argue that they are entitled to sanctions against Plaintiff's counsel because Plaintiff's previously filed Motion for Sanctions was frivolous. Specifically, Defendants allege that the basis of the Motion for Sanctions was that McClosky communicated directly with Plaintiff. Defendants further allege that had Plaintiff's counsel undertaken a minimal investigation into the facts, they would have realized that McClosky had not spoken to or otherwise communicated with Plaintiff. Defendants point to the fact that their counsel, in the Rule 11 Letter, informed Plaintiff's counsel that he had not ever communicated with Plaintiff. Additionally, Defendants emphasize the fact that during the evidentiary hearing on Plaintiff's Motion for Sanctions, Plaintiff himself admitted that he never spoke to McClosky. Defendants argue that Plaintiff's counsel could have ascertained that the Motion for Sanctions was frivolous within the 21 day allotment from the time the Rule 11 Letter was provided to them. According to Defendants, Plaintiff's counsel instead prolonged the resolution of the matter and increased the fees associated with defending the motion.

In response, Plaintiff's counsel argues that its Motion for Sanctions was not based solely on an allegation that McClosky communicated with Plaintiff. Rather, Plaintiff asserts

13

that its motion was based on other conduct of McClosky as well: preparation of a release and forwarding the release to Plaintiff to sign without notifying Plaintiff's counsel or providing a copy of the release to Plaintiff's counsel until after it was signed by Plaintiff.  Ultimately, Plaintiff's counsel contends that even though the Court found that McClosky did not directly communicate with Plaintiff, other conduct by McClosky provided a legitimate legal issue to support the Motion for Sanctions.

The Court agrees with Plaintiff.  As stated in the R&R previously entered in this case, in his motions, Plaintiff sought sanctions pursuant to Rule 60(b)(3) of the Federal Rules of Civil Procedure and Rule 4-4.2 of the Rules Regulating the Florida Bar.  The R&R went on to set forth a summary of Plaintiff's assertions:  that McClosky should be sanctioned because he communicated with a party represented by counsel (Plaintiff), facilitated a settlement without opposing counsel's knowledge, and provided a general release to Plaintiff without forwarding it to Plaintiff's counsel first. [D.E. 75].

After hearing extensive testimony on the issue, the undersigned found that McClosky did not directly communicate with Plaintiff regarding the settlement of this matter.  This finding was based in part on Plaintiff's admission during the hearing that he never spoke to McClosky.  The undersigned also concluded that he was unable to discern any technically sanctionable conduct attributable to Defendants or their counsel, especially in light of the extenuating circumstances that existed at the time of the events, wherein counsel was dealing with personal health problems at the same time.  Although the undersigned determined that sanctions against Defendants and their counsel were not appropriate, the R&R clearly set forth the Court's concerns regarding the manner in which the case was settled.  Indeed, the R&R

14

stated that "[t]here is a troubling issue here as to whether, in preparing the general release and failing to forward the release to Plaintiff's counsel, McClosky acted unethically, even if not in bad faith." [D.E. 75 at 16].

After analyzing the case law cited by both parties, the undersigned found that McClosky's conduct did not violate the Rules of Professional Conduct. However, the undersigned cautioned that "the better course of conduct would have been for McClosky to contact Plaintiff's counsel to advise him that the case had settled." [D.E. 75 at 16]. The Court's message behind this statement was that McClosky could have prevented the entire situation by merely forwarding a copy of the general release to Plaintiff's counsel in order to have counsel effectuate the signature of his client.

Overall, in order for the Court to find a violation of Rule 11 by Plaintiff's counsel it must determine that the claims asserted by Plaintiff in his Motion for Sanctions were objectively frivolous and unreasonable and that Plaintiff's counsel was aware that they were frivolous. *See Baker*, 158 F3d at 524. Although the Court rejected Plaintiff's argument and denied his request for sanctions, this alone does not require a finding of frivolousness. Instead, Plaintiff had a potentially plausible argument that McClosky's knowledge that the general release was going to be provided to Plaintiff for his signature constitutes a "communication" in violation of the Rules of Professional Conduct. The Court ultimately disagreed with Plaintiff due to the circumstances, but that disagreement does not equate to a finding that the arguments were without legal or factual basis.

The "reasonableness under the circumstances" standard announced in *Aetna Ins. Co. v. Meeker* also weighs in favor of Plaintiff. A reasonable attorney in like circumstances could

believe that pursuing sanctions was legally justified in this matter where opposing counsel failed to immediately notify of a settlement and failed to provide counsel with an opportunity to review a release before his client signed it.  Even had Plaintiff's counsel ascertained that Plaintiff did not speak directly with McClosky, that knowledge would arguably have not stopped Plaintiff's counsel from filing the Motion for Sanctions.  There was a prima facie basis to question whether counsel had manipulated the client's actions and directed the client's communications with Plaintiff outside the presence of Plaintiff's counsel – a factor that some cases cited in the R&R consider in determining whether the ethical rule has been violated.

Here, the Court finds that the Motion for Sanctions was not filed for an improper purpose nor was it based on an untenable legal theory.  This finding is particularly warranted because any doubts as to whether Rule 11 has been violated should be resolved in favor of the party who signed the pleading.  *See Great Lakes Reinsurance (UK) PLC v. Blue Sea, LLC*, 2006 WL 2471522 (M.D. Fla. 2006).

In sum, the fact that Plaintiff's Motion for Sanctions was ultimately denied does not render it frivolous.  Indeed, the Court is unable to discern any conduct attributable to Plaintiff or his counsel that violates Fed. R. Civ. P. 11.   Given the absence of compelling evidence of a frivolous pleading, or any bad faith motive or reckless conduct by Plaintiff or his counsel, the Court cannot objectively find their actions sanctionable under Federal Rule 11.

### III.   CONCLUSION

Accordingly, based upon a thorough review of the pending Motion, Response, Reply, and the court file, Defendants' Motion for Attorney's Fees and Sanctions [D.E. 77] is

**DENIED.**  Likewise, Plaintiff's cross-request for fees incurred in responding to Defendants'

Motion for Fees is **DENIED**.

      **DONE AND ORDERED** at Fort Lauderdale, Florida, this 1st day of December,

2006.

                                         _____

                                         EDWIN G. TORRES
                                       United States Magistrate Judge

cc:    The Honorable William P. Dimitrouleas

       Gregg W. McClosky, Esq.
       Charles H. Bechert, III, Esq.